HAROLD F. WHITE, by his next Friend, E. H. WHITE, Appellee, v. LEONARD E. McVICKER, Appellant.

No. 41547.

January 17, 1933.

Rehearing Denied May 6, 1933.

 ▪ 

Mahoney & Mackey, and Putnam, Putnam, Langdon & Fillmore, for appellant.

Dyer, Jordan & Dyer, for appellee.

Albert, J.—On November 14, 1930, Harold F. White, Walter Johnson, and Leonard McVicker started for the northern part of the state on a hunting expedition. When they reached a point on road No. 60, about 6 miles south of Webster City, in attempting to pass other automobiles going in the same direction, the defendant's car slipped or was driven off the improved portion of the road into a ditch on the left side thereof, traveling some 160 feet therein, until it struck an embankment of an intersecting road and this accident occurred.

██ One of the defenses pleaded by the defendant in this action was that of assumption of risk, and on motion the court struck this plea from defendant's answer. The action of the court in thus sustaining the motion is assigned as error.

This brings a question which is *res integra* in this court. We held in these guest cases that contributory negligence is not available as a plea. Siesseger v. Puth, 213 Iowa 164, 239 N. W. 46. But the question with which we are now confronted is not controlled by the Siesseger case. While the doctrine of contributory negligence and assumption of risk may arise under the same set of facts and sometimes thus overlap each other, yet we have consistently distinguished them and held that they are distinct and separate and must not be confounded with each other. See Gorman v. Des Moines Brick Mfg. Co., 99 Iowa 257, 68 N. W. 674; Sankey v. Chicago,

R. I. & P. Ry. Co., 118 Iowa 39, 91 N. W. 820; Doggett v. Chicago, B. & Q. R. Co., 134 Iowa 690, 112 N. W. 171, 13 L. R. A. (N. S.) 364, 13 Ann. Cas. 588; Sutton v. Des Moines Bakery Co., 135 Iowa 390, 112 N. W. 836; Nodland v. Kreutzer & Wasem, 184 Iowa 476, 168 N. W. 889.

As to the doctrine we are about to discuss, the use of the term "assumption of risk" is probably a misnomer, but the court seems to have generally used the term, and we will follow its practice of using this term to indicate this doctrine.

"Whenever one person is by circumstances placed in such a position with regard to another that every one of ordinary sense who did think, would at once recognize that if he did not use ordinary care and skill in his own conduct with regard to those circumstances, he would cause danger of injury to the person or property of others, a duty arises to use ordinary care and skill to avoid such danger." Heaven v. Pender, 11 Q. B. D. 508 (1883).

Where one sues on a tort, the defendant has two distinct defenses:

"I. To deny that his act caused the damage at all, although admitting the duty, (a) because of an intervening act of some one, or an intervening effect of something breaking the causal connection between the defendant's act and the injury; (b) because of some act of the plaintiff's himself occurring simultaneously or subsequently to the defendant's act, breaking the causal connection and rendering the defendant's act no longer the sole proximate cause of the injury.

II. To admit that his act caused the damage, but to deny the duty, (a) because no duty was imposed by law upon persons standing in the relative position of the parties, as, for instance, where the plaintiff is a trespasser, or, where he is not such person as the defendant was bound to anticipate would be likely to incur the danger; (b) because the plaintiff himself had voluntarily placed himself in such a position as that no duty arose as towards him."

No. 1 of the above-stated defenses is ordinarily called "contributory negligence". The second of the above-specified defenses is that expressed by the maxim *"volenti non fit injuria"* and, as stated above, it is strictly not a defense, but a rule of law regard-

ing a plaintiff's conduct which forms a bar to a suit brought by him based on another's alleged negligence. One who knows of a danger arising from the act or omission of another and understands the risk therefrom, and voluntarily exposes himself to it, is precluded from recovering for an injury which results from the exposure. Fitzgerald v. Connecticut River Paper Co., 155 Mass. 156, 29 N. E. 464, 31 Am. St. Rep. 537; Gorman v. Brick Mfg. Co., 99 Iowa 257, 68 N. W. 674.

In other words, toward a person fully cognizant and appreciative of a danger—a risk to which the defendant's conduct exposes him—the defendant has no duty of taking care, and therefore is not negligent.

When an action is brought on a tort, the defendant may say:

"You may have been as careful as the most careful man; you may have done a thing that many prudent men do, but you have exposed yourself, with a full knowledge and of your own accord, to a danger which I have brought about. You have hence shown that you agree to take your chances of the danger. I admit that this was not careless of you. But you did assume the risk. I therefore had no duty toward you, and you have no action against me."

"Furthermore, a man, having entered upon a dangerous undertaking with eyes fully open to the danger, may use all the care in the world. In fact, the very danger may make him even more than usually careful. In such a case contributory negligence can not be predicated of him. The question is a larger one. Has he voluntarily assumed the risk of the danger?" 8 Harvard Law Review, 460.

The origin of this doctrine was in the old civil law, and the maxim meant the defense arising from a specific assent by the party injured to the particular act which, if done without assent, would be a legal wrong. To state it in another way, it covers such "conduct as shows a willingness to take the chances of the defendant's action and run the risk; i. e., a general assent to a condition which may or may not give rise to the particular injury."

In the case of Gorman v. Brick Mfg. Co., 99 Iowa 257, loc. cit. 262, 68 N. W. 674, 676, we said:

"The doctrine of acceptance of risk must not be confounded

with that of contributory negligence. In the former case the doctrine is that one who, with full knowledge of the danger, or of the means of knowledge which he should have exercised, voluntarily remains in the employ of his master, disables himself from recovering damages, under the maxim, *'volenti non fit injuria'*. In the latter case recovery is denied because the plaintiff is wanting in that degree of care which under the circumstances he ought to have used, which want of care contributed to bring about the accident."

Broom's Legal Maxims (9th Ed.), p. 188, states this doctrine as follows:

"In actions founded on tort the leave and license of the plaintiff to do the act complained of usually constitutes a good defense by reason of the maxim *volenti non fit injuria* * * *; and, as a rule, a man must bear a loss arising from acts to which he assented. * * * As a rule, the application of the maxim is justifiable if the plaintiff received his injuries under circumstances leading necessarily to the inference that he encountered the risk of them freely and voluntarily and with full knowledge of the nature and extent of the risk: in other words, if the real cause of the plaintiff running the risk and receiving the injuries was his own rash act."

The sum total of the application of this doctrine simply stated is that, where one is placed in the position where he has his choice of doing or not doing a given act, this doctrine applies. We take it to be the rule, therefore, under this doctrine, that, where one voluntarily becomes a guest in an automobile, with a knowledge that the driver is incompetent or inexperienced, or after he has assumed his position in the car, it comes to his knowledge that the driver is intoxicated, or is reckless in his driving, and with such knowledge on his part he aids or encourages the driver, or acquiesces or joins or co-operates in such recklessness, he takes the chance of an accident, and, in case an accident occurs, arising from such known incompetency, inexperience, or intoxication of the driver, or other such known recklessness, then plaintiff cannot recover.

Under like statutes, other states have held to this doctrine under similar circumstances. See Haines v. Duffy, 206 Wis. 193, 240 N. W. 152, 153, where it is said:

"It is well settled that it was her duty to protest at an excessive or dangerous rate of speed. There is an increasing tendency to designate this failure to protest as contributory negligence. It is not strictly contributory negligence. The duty to protest grows out of the relation of host and guest, and it constitutes an essential element in the question of whether the guest may recover damages resulting from the negligence of the host. * * * Where the invitation is to take an automobile ride, the guest is warranted in assuming that the host will not drive at a reckless or unlawful rate of speed. However, it may suit the pleasure of both the host and guest to drive at a high rate of speed. Where this results with the acquiescence of the guest, the guest is not permitted to recover from the host. This is not because the guest is, strictly speaking, guilty of contributory negligence, or any negligence, but rather because the guest has acquiesced in the conduct of the host, and it would be against reason and justice to permit a recovery against the host under such circumstances."

As heretofore noted, this question arose by reason of striking from the defendant's answer the allegations thereto. It is insisted, however, that, even though this might be the rule, no prejudicial error was committed, because there was no evidence on which to base this doctrine. The contention made that the evidence introduced in the case did not warrant the court in submitting this issue to the jury was well taken.

Ordinarily, we would not give attention to this error, but, as the case is to be remanded, the evidence on a retrial may be different and might make this a jury question on this issue.

Another error assigned involves the correctness of instruction No. 3 given by the court. The first part of this instruction states the law as provided in section 5026-b1, Code 1927. The instruction then proceeds:

"The word 'reckless' as used in these instructions, means proceeding without heed of or concern for consequences. To be reckless, one must be more than negligent. Recklessness implies no care, coupled with disregard for consequences. Conduct arising from momentary thoughtlessness, inadvertence, or from an error of judgment, does not indicate a reckless disregard of the rights of others.

"To express the same thought in different words, 'reckless' is defined as meaning desperately heedless, destitute of heed or con-

cern for consequences, foolishly heedless of danger, headlong, rash, desperate."

It will be noticed that, with the exception of the last paragraph, the definition of "reckless" set out in the instruction corresponds with the definition this court laid down in Siesseger v. Puth, 213 Iowa 164, 239 N. W. 46, 49. The last paragraph of the instruction, however, goes much further than the definition of "recklessness" laid down in the Siesseger case, as it adds elements of "desperation" and "foolishly heedless of danger". These are terms much stronger than those used by this court in the Siesseger case, and hence conflict with the definition laid down in that case. Thus the instruction as given, in its different parts, is conflicting and confusing, and is erroneous, but, in view of the fact that, taken as a whole, it puts a greater burden on the plaintiff than the law required, and he won a verdict even with this added burden, the defendant cannot complain, and the error was without prejudice.

■ Again, it is insisted that the court erred in not submitting the issue as to joint adventure or common purpose charged by the defendant in its answer.

In accord with the general rule of this court, which is in line with that of other courts, it is held that a mere guest, having no voice in directing or governing the movements of the automobile, cannot be said to be engaged in a joint adventure with the driver, within the meaning of the law of negligence, so as to bar recovery from a third person for injuries sustained on account of the latter's negligence, though the one with whom the guest was riding was guilty of contributory negligence. Among numerous Iowa cases so holding see: Tusant & Son Co. v. Chas. Weitz Sons, 195 Iowa 1386, 191 N. W. 884; Stilson v. Ellis, 208 Iowa 1157, 225 N. W. 346; Wagner v. Kloster, 188 Iowa 174, 175 N. W. 840; Cram v. City of Des Moines, 185 Iowa 1292, 172 N. W. 23; Stoker v. Tri-City R. Co., 182 Iowa 1090, 165 N. W. 30, L. R. A. 1918F, 515; Bridenstine v. Iowa City Electric R. Co., 181 Iowa 1124, 165 N. W. 435; Lawrence v. City of Sioux City, 172 Iowa 320, 154 N. W. 494; Withey v. Fowler Co., 164 Iowa 377, 145 N. W. 923. For an elaborate note on this proposition as to the rule in other states see 48 A. L. R. 1078.

In each instance where this rule has been invoked, it was

the contention that the negligence of the driver of the car was imputable to the guest, and in each instance it was a case where the action was brought by the guest against a third person. The case at bar, however, is not an action by a guest against a third person, but an action by a guest against the driver and owner of the car. Does the above doctrine of joint adventure or common enterprise apply in such a case?

It seems, after an investigation of the reports of the different states on this question, that it is the uniform holding that, in so far as the question is involved in a suit between a guest and the driver and owner, this doctrine is not applicable.

In Harber v. Graham, 105 N. J. Law 213, 143 A. 340, loc. cit. 342, column 2, 61 A. L. R. 1232, that court said:

"Taking up the 'common enterprise' point, we think the learned trial judge lost sight of the fact that this principle, resting as it does upon the relation of agency existing inter sese among persons engaged in a joint or common enterprise, is applicable only as regards third persons not parties in such enterprise. For instance, if two persons engaged in a common enterprise are, as a part of that enterprise, riding in an automobile driven by one of them, who is subject to the direction of the other, and the other one is injured in a collision with another car because of the negligence of the drivers of both, the injured joint-enterprise party cannot recover against the driver or owner of the other car, because of the contributing negligence of his agent, viz., of the party engaged with him in the joint enterprise, and under his control. But if there had been no other car in the case, and the injury had resulted from the negligent driving of the man who was driving the car in which he was riding, the fact that both of them were engaged in a common enterprise would be no bar to a recovery by him against the negligent driver."

In Bailey v. Parker, 34 Ohio App. 207, 170 N. E. 607, loc. cit. 609, the Appellate Court of Ohio said in relation to this question:

"The question presented by this phase of the case we believe to have been fully settled in Bloom v. Leech, Adm'r, 120 Ohio St. 239, 166 N. E. 137. The court in that case announces a further restriction upon the rule, which precludes the defendant from the

claim made, in that the exception to the rule does not apply and may not be invoked in an action by one member of the enterprise against another, for the reason that one cannot invoke his own negligence to defeat his associate's claim for injuries due to such negligence. To do so would permit one to take advantage of his own wrong."

In O'Brien v. Woldson, 149 Wash. 192, 270 P. 304, 305, 62 A. L. R. 436, the Supreme Court of Washington said:

"It does not necessarily follow, however, that that rule should be applied when the action is by one member of the joint enterprise as against the other. When the action is against a third person each member of the joint enterprise is a representative of the other, and the acts of one are the acts of all if they be within the scope of the enterprise. When the action is brought by one member of the enterprise against another, there is no place to apply the doctrine of imputed negligence. To do so would be to permit one guilty of negligence to take refuge behind his own wrong. The situation when the action is brought by one member of the enterprise against the other is entirely different from that when recovery is sought against a third person."

In Williamson v. Fitzgerald, 116 Cal. App. 19, 2 P. (2d) 201, 205, the Appellate Court of California said:

"Regardless of whether the circumstances of the pleasure party in the present case constituted a joint enterprise as that term is defined by the law, the doctrine of imputed negligence may not be invoked by one member of the joint enterprise against another so as to defeat a claim for damages for negligence on the part of the former. The doctrine of imputed negligence is inapplicable to a member of a joint enterprise or common adventure when one member of the enterprise is sued by another member thereof for injuries sustained through the negligent operation of an automobile which is being used in the course of the enterprise. The doctrine of joint enterprise is peculiar to the subject of contributory negligence and has no application to actions brought by one joint adventurer against another to recover for injuries due to the latter's negligence", citing numerous cases.

In Ledgerwood v. Ledgerwood, 114 Cal. App. 538, 300 P. 144, 145, the same court said:

"We need not stop to consider the sufficiency of the evidence to show joint enterprise nor whether the respondent might properly be deemed the owner because of her community property interest in her husband's car. We may assume that respondent was the owner of the car and that the parties were engaged in a joint enterprise, but in our opinion the negligence of appellant may not be imputed to respondent, and her right of recovery is not defeated in the absence of actual negligence on her part."

In Schwartz v. Johnson, 152 Tenn. 586, 280 S. W. 32, 33, 47 A. L. R. 323, the Supreme Court of Tennessee said:

"To justify the imputation of negligence, there must be agency on the one hand, authority on the other."

In Whiddon v. Malone, 220 Ala. 220, 124 So. 516, loc. cit. 517, the Supreme Court of Alabama said:

"On principle as well as authority the driver of a car who by his negligence injures a fellow passenger is liable without reference to any question of joint enterprise between them. He can defend only on the ground of contributory negligence as in other cases. He cannot impute contributory negligence for mere failure to anticipate and prevent his own negligent conduct", citing 1 Berry, Automobiles (6th Ed.), p. 515.

In discussing this same question, the Supreme Court of Wyoming in Ryan v. Snyder, 29 Wyo. 146, 211 P. 482, 483, summarized the question as follows:

"Such a state of facts established a liability, so far as the statement of a cause of action is concerned, on the part of those who were in charge of the automobile to the plaintiff who was injured; the rule governing that subject being that one who uses an automobile is liable for injury through the operation of the car by him to an invited guest, if he fails to exercise care reasonably commensurate with the nature and hazard attending such mode of travel; he being under a duty not to unreasonably expose the guest to danger and injury by increasing such hazard."

In Berlin v. Koblas, 183 Minn. 278, 236 N. W. 307, 308, the Supreme Court of Minnesota said:

"The plaintiff claims that she was guest and the defendant

host. The defendant claims that she and the plaintiff were engaged in a joint enterprise. It matters not which. If the relationship was that of guest and host the defendant was liable for her personal negligence. [Citing cases.] If they were engaged in a joint enterprise, a question which we find it unnecessary to decide and upon which we give no opinion, and the defendant was personally negligent in the operation of the car, the result is the same. * * * Confusion arises through a failure to distinguish between the liability of all engaged in a joint enterprise for a wrong done to a third person by one of them, where the liability rests upon the ground of representation of all by one, and the liability of one for his negligence resulting in injury to those concerned with him in the joint enterprise."

Some light is thrown on this question by Collins v. Anderson, 37 Wyo. 275, 260 P. 1089, and Neuman v. Eddy, 15 La. App. 45, 130 So. 247. See also, November, 1932, Iowa Law Review, p. 78.

The sum total of these cases amounts to the proposition that the doctrine of joint adventure or common enterprise has no application in an action between the guest and the driver of the car.

We do not determine the question here whether the facts in this case show that there was a joint enterprise, nor pass upon the question which is not raised—that one who is engaged in the joint enterprise is or is not a "guest" within the meaning of the statute. What we do hold is that, under the record in the case, the court was justified in not submitting to the jury the issue of joint adventure or common enterprise.

The next error raised involves the question of the showing under the evidence in the case.

It appears that on the 14th day of November, 1930, Harold F. White, the defendant, McVicker, and one Johnson, in McVicker's automobile, started north from Boone on highway No. 60 on a pheasant hunting expedition. They left home about 5 o'clock in the morning, and went some miles south of Webster City where this accident occurred. They were driving at a rate of speed of 40 to 45 miles an hour. The road was graveled and smooth at all points in controversy. About •6 miles south of Webster City they overtook a car driven by one Kemmerer. They passed that car, and ahead of the Kemmerer car was another car, driven by one Sandelius. The occupants of both of these cars were in pur-

suance of the same recreation. After passing the Kemmerer car, the McVicker car continued on the left side of the road for the purpose of passing the Sandelius car, which was about 60 feet ahead of the Kemmerer car. In an effort to pass the Sandelius car, the defendant's car slipped and went into the ditch, where it proceeded for about 160 feet and there struck the embankment of an intersecting road, turned over twice, and finally landed on its wheels some 105 feet north of the intersecting road.

Plaintiff was seriously injured, and the evidence tends to show that after the McVicker car went into the ditch it proceeded along the same at an increased rate of speed, and was going about 55 miles an hour when it struck the embankment of the intersecting road.

These are sufficient of the facts for the question now to be dealt with.

The court submitted two specifications of recklessness, and covered the same in instruction No. 5, a part of which instruction is as follows:

"The first respect in which the plaintiff claims that the defendant recklessly operated his automobile is that defendant drove his automobile at such a high and excessive rate of speed as to amount to reckless operation of the defendant's car. * * * The second charge of recklessness which plaintiff makes against the defendant is that the defendant recklessly operated his automobile in driving it off from the traveled portion of the highway and into a ditch on the left side thereof," etc.

We conclude from a careful reading of the record that there is no evidence to support the second specification of recklessness above set out. It would not do to allow the jury to hold that, when traveling on a straight, smooth, graveled road, one who turns out to his left and drives 40 to 45 miles an hour. in passing other cars was reckless. There might be a case in which the facts and circumstances surrounding the transaction would make a jury question, but, under the record made in this case, there is nothing to show that, while driving his car on the left side of the road in passing other cars, defendant was reckless.

Recklessness being the basis of this action, it might be that there would be a jury question as to whether the defendant was negligent in getting too close to the edge of the road, but, even if

that be true, it would not warrant the court in treating such evidence alone as recklessness.

The court erred in submitting to the jury this second specification of negligence, under the record in the case, and, of course, such error was prejudicial.

As to the first specification of negligence, we are of the opinion that there was sufficient evidence to carry the case to the jury on the question of recklessness after the car passed off of the grade into the ditch.—Reversed.

KINDIG, C. J., and STEVENS, ANDERSON, and DONEGAN, JJ., concur.

EVANS, J., dissents.